UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**WALEED SAID BN SAID ZAID,**

　　Petitioner,

　　v.                                                     Civil Action No.  05-1646 (JDB)

**BARACK H. OBAMA, et al.,**[1]

　　Respondents.

# ORDER

　　Before the Court is respondents' motion for reconsideration of the Court's January 22, 2009 order.  The January 22 order addressed petitioner's motion to compel compliance with section I.E.1(2) of the Case Management Order in this case ("Zaid CMO").  The Court rejected respondents' interpretation of section I.E.1(2) -- which requires production of "all statements, in whatever form, made or adopted by petitioner that the government relies on to justify detention" -- as too narrow.  The Court ordered respondents to inform the Court whether they possess certain forms of petitioner's statements.  After respondents filed their motion for reconsideration, they filed a response to the January 22 order ("Gov't Resp.") which, based on a review of the consolidated records readily available, identified those forms of petitioner's statements currently in their possession.

　　Respondents again argue that the Court has misconstrued its own Case Management Order.  As a threshold matter, respondents overstate their success in persuading Judge Hogan to

---

[1] Former President George W. Bush was named as the original lead respondent in this case.  Pursuant to Federal Rule of Civil Procedure 25(d), the Court automatically substitutes his successor, President Barack H. Obama, as the new lead respondent.

reconsider his earlier case management orders in these Guantanamo Bay habeas cases.[2]  Whereas his original case management order provided for automatic discovery of "all statements, in whatever form, made or adopted by the petitioner <u>that relate to the information contained in the factual return</u>," see Judge Hogan's Initial Case Management Order § I.E.1(2) (emphasis added), upon reconsideration his amended order provided for automatic discovery of "all statements, in whatever form, made or adopted by the petitioner <u>that the government relies upon to justify detention</u>," see Judge Hogan's Final Case Management Order § I.E.1(2) (emphasis added).  To be sure, the amended order reduced respondents' automatic discovery burden under section I.E.1(2) -- but not as much as respondents claim.

Under respondents' reading, section I.E.1(2) requires only that they produce petitioner's statements in the form already included in the factual return.  This interpretation is incorrect.  First, the phrase "in whatever form" in section I.E.1(2) plainly modifies "all statements."  The sentence would have to be rewritten to support respondents' reading, to wit: "all statements made or adopted by petitioner in whatever form that the government relies upon to justify detention."  Second, respondents' interpretation would obviate section I.E.1(2) because under their reading section I.E.1(2) would be satisfied by production of the factual return itself, with its attached statements.  But production of the factual return is a separate requirement in these habeas cases.  See July 11, 2008 Scheduling Order at 3-4.  Hence, the Court has not misconstrued its own Case Management Order and to the extent respondents claim otherwise, their motion for reconsideration is **DENIED**.

---

[2] In any event, Judge Hogan's Case Management Order does not control in this case.  As the Zaid CMO noted, "[t]his case-specific Case Management Order supersedes the Case Management Orders entered by Judge Hogan . . . ."  Zaid CMO at 1 n.1.

Nonetheless, respondents raise a valid point that requires granting their motion in part. They point out that "there are consolidated assemblages of information on each detainee from two components of the Department of Defense, which were reviewed by Department of Defense and Department of Justice attorneys in preparing the factual returns." See Respondents' Motion for Reconsideration at 13 (emphasis in original). These files were compiled -- over the course of hundreds of thousands of hours -- by the Joint Intelligence Group ("JIG") of the Joint Task Force-Guantanamo ("JTF-GTMO") and the Office for the Administrative Review of the Detention of Enemy Combatants ("OARDEC"). Id. (citing Declaration of Gordon England ¶ 7). Nevertheless, these files are not fully comprehensive -- "they do not necessarily contain every document relevant to the petitioner [] or every recording, summary, set of contemporaneous notes, or iteration of the petitioner's statements." Id. (emphasis in original). In preparing the factual returns, respondents relied only on these compilations. Respondents propose an interpretation that would limit section I.E.1(2) automatic discovery to searches of these "consolidated assemblages of information." See id. at 14 n.9. Under respondents' proposal, then, they would not be required to look beyond the consolidated JTF-GTMO and OARDEC files unless the Court grants a specific discovery request under section I.E.2 of the Zaid CMO.

Respondents' proposed modification is sensible. It would significantly reduce the burden a broader interpretation of section I.E.1(2) might otherwise impose. Moreover, it would do so without retreating from the principles that prompted the Court to include section I.E.1(2) in the Zaid CMO in the first place. The purpose of section I.E.1(2) was to ensure that petitioner has access to all versions of his own statements that respondents rely upon to justify detention. In other words, section I.E.1(2) is intended to prevent the attorneys putting together the government's argument in these habeas cases from selecting, and hence producing, only those

versions of petitioner's statements most helpful to the government's case and ignoring all the rest. If respondents rely only on the information contained in the consolidated files to justify petitioner's detention, then only the versions of petitioner's relied-upon statements found in those files need be produced to petitioner as a matter of course under section I.E.1(2). If petitioner believes that other versions of statements exist and would be exculpatory or demonstrate that he is not an enemy combatant, then he may resort to section I.E.2 to obtain additional discovery. To the extent respondents' motion for reconsideration proposes an interpretation that would limit searches for section I.E.1(2) material to the consolidated files compiled by JTF-GTMO and OARDEC, then, respondents' motion is **GRANTED**.

This compromise is not as uncontroversial as it might sound. Petitioner would no doubt argue that section I.E.1(2) requires a broad reading because the process of compiling the "consolidated assemblages" was itself one-sided and agenda-driven. That is, in compiling the consolidated files, JTF-GTMO and OARDEC may have left out versions of petitioner's statements that are damaging to respondents' case. Moreover, section I.E.2 is not a practical method of obtaining excluded versions of petitioner's statements. Section I.E.2 requires petitioner to "explain why the requested discovery will not unfairly disrupt or unduly burden the government." Because searches beyond the consolidated files will necessarily be burdensome, the argument goes, petitioner may effectively be foreclosed from obtaining versions of statements excluded from the consolidated files.

The dilemma this argument poses is mitigated in part by the fact that the new Executive Branch administration -- on its own initiative -- is seeking information about the Guantanamo Bay detainees beyond the information presently contained in the consolidated files. In section 4(c)(1) of President Obama's Executive Order regarding the review of Guantanamo Bay

detainees and detention practices, the President directs the Attorney General to:

> [A]ssemble all information in the possession of the Federal Government that pertains to any individual currently detained at Guantanamo and that is relevant to determining the proper disposition of any such individual. All executive branch departments and agencies shall promptly comply with any request of the Attorney General to provide information in their possession or control pertaining to any such individual.

See Exec. Order No. 13,492 at § 4(c)(1), 74 Fed. Reg. 4897 (Jan. 22, 2009). The Executive Order will presumably add to the consolidated files now in respondents' possession or create a new, more comprehensive set of consolidated files for each detainee. These files will be a new source of easily-accessible information about petitioner and may include versions of statements not presently included in respondents' files. This is a resource the Court should not ignore.

To that end, respondents are **ORDERED** to provide the Court, in writing and on April 9, 2009, with a status report. The status report shall advise whether the process outlined in section 4(c)(1) of President Obama's Executive Order has procured additional information regarding petitioner.[3] Consistent with this Court's interpretation of section I.E.1(2), the status report shall also advise whether respondents have obtained additional versions of "statements . . . made or adopted by the petitioner that the government relies on to justify detention." This approach will allow petitioner's case to proceed with minimal burden to the government yet at the same time enable petitioner to develop his case.[4]

---

[3] The Court does not know -- indeed, respondents themselves may not know -- whether President Obama intends to create new consolidated files for each petitioner or to supplement the existing consolidated files created by JTF-GTMO and OARDEC. Whatever course is taken, respondents should expect to review and report on the new information about petitioner, if any, that the process outlined in section 4(c)(1) of the Executive Order gathers.

[4] Petitioner has also filed a motion to compel compliance with section I.E.1(3) of the Zaid CMO. As this motion is not yet ripe for resolution, the Court does not address whether the April 9, 2009 status report should also report on materials responsive to section I.E.1(3).

Finally, there is the issue of what respondents must now produce under section I.E.1(2). In reviewing the consolidated files to respond to the Court's January 22 order, respondents found that the files <u>do not</u> contain audio or video recordings or transcripts for any of petitioner's statements. Gov't Resp. at 2-3. Respondents found, however, that the files <u>do</u> contain other records or reports (<u>i.e.</u>, those made by persons other than those creating the records or reports attached to petitioner's factual return) and that "it is probable that at least some rough notes of one or more interviews of the petitioner do exist." <u>Id.</u> at 3-4. Consistent with the approach described above, respondents are **ORDERED** to produce all versions of petitioner's statements that they rely upon in any form in which those statements exist in the consolidated files -- including records, reports, and notes -- by not later than February 16, 2009.

    **SO ORDERED.**

                                  /s/
                            JOHN D. BATES
                      United States District Judge

Date:    February 9, 2009